# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BINDAGRAPHICS, INC.,      *

               *     Civil No. CCB-18-2193

v.      *

FOX GROUP, INC.,      *
And
ERIC RODGERS      *

***

## Memorandum

This employment contract dispute arises out of Eric Rodgers's decision to leave his job as a Sales Representative in the plaintiff's trade binding division and to take a position with Fox Group, Inc., a company similarly engaged in commercial bindery services. Count I alleges breach of contract and is brought against Mr. Rodgers alone. Count II, brought against Fox Group, Inc., alleges tortious interference with contractual relations. Count III, levied against both defendants, alleges misappropriation of trade secrets. Both defendants have moved for dismissal as a matter of law. (Fox Group, Inc. Mot. Dismiss, ECF No. 11; Rodgers's Mot. Dismiss, ECF No. 13.) The briefing is complete. The motions to dismiss will be granted. The plaintiff's noncompete contract claim will be dismissed with prejudice; all other claims will be dismissed without prejudice. The plaintiff, who asks to amend its tort claim if held to be insufficiently pleaded, may do so. Similarly, it may seek to amend its complaint to provide specific facts pertaining to the confidential information or trade secrets allegedly taken and/or misused. If the plaintiff decides to file an amended complaint, it may plead facts, if any exist, relevant to whether Mr. Rodgers was the sole sales representative in the sales territory or the extent of his contact with customers in the sales territory.

1

## BACKGROUND

Mr. Rodgers took a sales position in Bindagraphics's trade binding division in November 2013. Compl. ¶ 6. This was a customer-facing position within a specific geographic region called "Eric's Territory," constituted of forty-six customers roughly located in the geographic triangle between New York, NY; Harrisburg, PA; and Wilmington, DE. Compl. ¶ 11; Compl. Ex. 4. Mr. Rodgers was provided confidential customer lists and other proprietary information. Compl. ¶ 9. Upon joining Bindagraphics, Mr. Rodgers signed an employment contract, which, as relevant here, included a non-solicitation clause, a covenant not to compete, and a provision pertaining to trade secrets and confidential information. The precise language of these promises bears directly on the merits inquiry to follow. Therefore, the relevant sections are set forth here in full:

> 5. Covenants Against Competition. The Employee acknowledges that his employment with Employer will, of necessity, provide him with specialized knowledge and customer contacts, which, if used in competition with Employer, could cause serious harm to Employer. Accordingly, Employee hereby expressly covenants and agrees that during the term of this Agreement, and for a period of one (1) year immediately following the date on which he is no longer an Employee of Employer, he will not, directly or indirectly, for himself, or on behalf of any other person, corporation or other entity (except Employer):
>
>> a. Call upon or otherwise contact any Customer of Employer for the purpose of soliciting the purchase by, or selling to, any such Customer, trade binding, folding and/or finishing services, or other products or services identical or similar to the products or services now or hereafter sold by Employer through its trade binding division; or make sales, or assist in making sales, of any of the aforementioned services or products to any such Customer; or receive or process orders, expedite production, resolve problems or otherwise service any such Customer in connection with such Customer's purchase of any of the aforementioned service or products. For purposes of this Paragraph 5, a "Customer" of Employer shall mean any person, corporation, governmental body or department or other entity located in the Sales Territory to which Employer, through its trade binding division, has rendered services or sold products at any time within the twelve (12) month period immediately preceding the date of the termination of Employee's employment with the Employer, or the date of the call, contact or sale by Employee if such call,

2

contact or sale takes place prior to termination of Employee's employment with the Employer.

    b. Call upon or otherwise contact any Prospective Customer of Employer for the purpose of soliciting the purchase by, or selling to, any such Prospective Customer, trade binding, folding and/or finishing services, or other products or services identical or similar to the products or services now or hereafter sold by Employer; or make sales or assist in making sales, of any of the aforementioned services or products to any such Prospective Customer; or receive or process orders, expedite production, resolve problems or otherwise service any such Prospective Customer in connection with such Prospective Customer's purchase of any of the aforementioned products or services. For purposes of this Paragraph 5, a "Prospective Customer" of Employer shall mean any person, corporation, governmental body or department or other entity located in the Sales Territory, that is called upon or otherwise contacted, or to which a bid or proposal is submitted, by Employer or Employee, for the purpose of soliciting the purchase by, or selling to, such person, corporation, governmental body or department or other entity any products or services, at any time within the twelve (12) month period immediately preceding the date of the termination of Employee's employment with Employer.

    d. Render services to, promote or become employed by, any person, corporation or other entity which: (i) is engaged in the business of rendering, producing or selling trade binding, folding and/or finishing services, or other products or services identical or similar to any products or services now or hereafter rendered produced or sold by Employer through its trade binding division at any location within the Sales Territory; and (ii) sells such products, or renders such services, to any Customer or Prospective Customer of Employer at any time during which Employee is rendering services to, promoting or is employed by such person, corporation or other entity.

6. <u>Trade Secrets Customer Lists etc.</u> Employer has disclosed, and will disclose to Employee, various business methods, binder and folder manufacture and production processes, trade secrets, customer lists, supplier lists and other information which will benefit Employee and which, if used by or disclosed to Employer's competitors, would injure Employer and its business. Employee, therefore, covenants not to use, or to publish or disclose, or authorize anyone else to publish or disclose, to any person, corporate or other entity, other than to an authorized employee, officer or director of Employer, at any time subsequent to the signing of this Agreement, any information relating to Employer's business methods, manufacturing and production methods, finances, pricing, marketing methods, customer-lists, suppliers or supplier lists, or any other Confidential Information of Employer. All information regarding Employer's business, including information regarding customers, customer lists, suppliers, supplier lists, marketing or business plans, employees, wage and salary information, financial information, trade secrets, costs, prices, earnings, products, know-how, secret formula or processes, machinery and equipment and prospective and executed contracts, orders and other business arrangements, are presumed to be "Confidential Information" of Employer for purposes

3

of this Agreement, except to the extent such information may be lawfully and readily available to the general public. Employee further agrees that he will, upon termination of his employment with Employer, return to Employer in good order and condition any and all books, records, lists and other written, typed or printed materials, and all computer discs, tapes, or other electronic information storage media whether furnished by Employer or prepared by Employee, which contain any information relating to Employer's business or customers, and Employee agrees that he will not retain any copies of any such materials after termination of his employment.

Compl. ¶¶14-15.

The defendants mount several related arguments in favor of dismissal, chief among them the contention that this contract language is not enforceable as a matter of law. Fox Group, Inc. levies additional challenges to the tort claim, asserting that damages have been insufficiently pled and the term "Sales Territory" is illusory. (Fox Group, Inc. P&A Mot. Dismiss at pp. 1-2, ECF No. 11-1.)[1] Mr. Rodgers argues that the plaintiff has failed to identify a protectable trade secret. (Mr. Rodgers P&A Mot. Dismiss at pp. 1-2, ECF No. 13-1.) The plaintiff has responded to these arguments (ECF No. 15) and the defendants have filed a consolidated reply. (ECF No. 17). This opinion disposes of the defendants' pending motions to dismiss.

## ANALYSIS

### I. Standard of Review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition

---

[1] All citations will refer to the ECF pagination.

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## II. Discussion

### i. Count I: Breach of Contract

The plaintiff argues that Mr. Rodgers breached his employment contract by accepting a job with Fox Group, Inc., by soliciting a Bindagraphics's trade binding customer, and by disclosing or using Bindagraphics's confidential information on behalf of Fox Group, Inc. Compl. ¶¶ 34-39. Mr. Rodgers contends that this claim must fail because the "clear and unambiguous" language of the contract reveals it to be overbroad and geographically untethered, rendering the contract itself unenforceable, and because the plaintiff has failed to allege a breach. (Mr. Rodgers P&A Mot. Dismiss at pp. 4-5, 14, ECF No. 13-1.) Bindagraphics asserts that the employment contract is not

overbroad and that, even if it were, the court can narrow it instead of declaring it wholesale unenforceable. (Resp. Defs.' Mots. Dismiss, ECF No. 15.)

The applicable legal standard is not in dispute. "In Maryland, a restrictive employment covenant will only be enforced if it meets four requirements: '(1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy.'" *Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461 (D. Md. 2016) (quoting *Medispec, Ltd v. Chouinard*, 133 F. Supp. 3d 771, 773-74 (D. Md. 2015); *Deutsche Post Global Mail, Ltd v. Conrad*, 116 Fed. App'x. 435, 438 (4th Cir. 2004) ("*DPGM II*")).[2] Mr. Rodgers contends that the noncompete and the nonsolicitation covenants are wider in scope and duration than necessary and are therefore facially overbroad and unenforceable.

The second prong requires the court to assess the reasonableness of each restrictive covenant challenged based on the scope of the individual covenant itself. *Medispec, Ltd.*, 113 F. Supp.3d at 774. If the covenant is not facially overbroad, "the facts and circumstances of each case must be examined." *Id.* at 744-75. A restrictive covenant that is not facially overbroad can still be overbroad as applied to the employee at hand. *See, e.g., Paul v. ImpactOffice LLC*, 2017 WL 2462492, at *7. The first step in the analysis, then, is to identify the protected interest the covenants are designed to safeguard. It is not disputed that "employers have a protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer." *Seneca One Fin., Inc.*, 214 F. Supp. 3d at 461 (citations omitted); *see also Holloway v. Faw, Casson & Co.*, 319 Md. 324, 335 (1990) ("*Holloway I*"). "Persons in

---

[2] Unpublished cases are cited not for their precedential value but for the persuasiveness of their reasoning.

business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Id.* "Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers." *DPGM II*, 116 Fed. App'x. at 438. On the other hand, however, mere insulation from more efficient or enhanced competition is not a protectable interest. *MCS Servs., Inc. v. Jones*, 2010 WL 3895380, at *3 (D. Md. Oct. 1, 2010).

In this case, Mr. Rodgers's employment duties as a sales representative were inextricably tied to his relationships with trade binding customers. Compl. ¶ 11. And cultivating such relationships was part of his job description. Compl. ¶ 10. When viewed in the light most favorable to Bindagraphics, and through the innumerable cases similarly pertaining to customer goodwill, it is clear that Bindagraphics had a legally protected interest in the goodwill Mr. Rodgers built as a trade binding sales representative. *See, e.g., DPGM II*, 116 Fed. App'x. at 438. The scope and duration of the restrictive covenants here will be considered in view of this protected interest.

A. Noncompete Covenant

The noncompete covenant at issue here (Section 5(d)) seeks to preclude Mr. Rodgers from working, directly or indirectly, for any Bindagraphics competitor for one year. The provision is limited to competitors in the trade binding industry within Mr. Rodgers's sales territory and which sell products or services to Bindagraphics customers or potential customers during Mr. Rodgers's tenure in their service. Customers are limited to those served by Bindagraphics in the year preceding Mr. Rodgers's departure or those with whom Mr. Rodgers spoke within one year of the individual being a Bindagraphics customer. Prospective customers are those solicited by

7

Mr. Rodgers or Bindagraphics in the year preceding Mr. Rodgers's termination. The scope of this prohibition is not confined to sales positions or work akin to Mr. Rodgers's duties on behalf of Bindagraphics. Instead, it would prohibit Mr. Rodgers from working in any capacity for a competitor that met the above criteria, even one unrelated to sales. As numerous courts in this district have held, the fact that Mr. Rodgers is prohibited from working in any capacity for a competitor renders the restriction wider than reasonably necessary to forestall the loss of customer goodwill.

Courts applying Maryland law have found similar noncompete covenants to be facially overbroad. In *Paul v. ImpactOffice, LLC*, the noncompete covenant at issue prohibited the employee from working for a competitor within a 90-mile radius in the 6 months following his termination. 2017 WL 2462492, at *4. But, as in this case, the restriction pertained to any position the employee might take with a competitor, not merely those where he might take advantage of personal relationships with customers. *Id.* In finding the covenant facially overbroad, the court reasoned that the promise "focuses on the nature of the competitor rather than the work performed by the former employee. . . . Such a provision does not reflect a narrowly tailored approach to safeguarding customer goodwill." *Id.* at * 5. The same is true here.

In *Medispec, Ltd. v. Chouinard*, the covenant in question prevented the employee from working "in an [sic] capacity whatsoever, directly or indirectly" with a competitor. 133 F.Supp.3d at 772. The court found that the prohibition was facially overbroad because it "prevents Defendant from taking any, job, no matter how unrelated to his prior sales work, with a company that indirectly competes" with the plaintiff and was "not reasonably targeted to achieve the Plaintiff's stated interest in protecting goodwill." *Id.* at 775. In *Seneca One Finance, Inc. v. Bloshuk*, albeit a case involving a nationwide restriction, the contract at issue similarly

prohibited the employee from "directly or indirectly" working on behalf of the "same or similar" business. 214 F.Supp.3d at 461. The court reasoned that the "provision is not limited to the work that [the defendant] performed . . . and is far wider in scope than is reasonably necessary to protect the goodwill" the defendant created on his employer's behalf. *Id.* at 461-62. Similarly, in *MCS Services, Inc. v. Jones*, the court reasoned, "the scope of the proscribed activity is not properly bounded . . . [because the] covenant demands that Jones shall not directly or indirectly be employed by any other entity, in competition with, or similar in nature to, MCS. It therefore prohibits Jones from working in any capacity with any company that competes or may compete in any way with MCS. This sweeping prohibition is not reasonably necessary to protect the customer goodwill Jones created, and it is not narrowly tailored to that end. It constrains the list of Jones's potential employers instead of targeting possible goodwill-thieving activities." *MCS Servs., Inc.*, 2010 WL 3895380, at *3 (internal citations omitted). The present covenant similarly proscribes direct or indirect action by the employee and does not cabin its effect to positions where Mr. Rodgers might traffic in customer goodwill.

The Fourth Circuit has ratified this logic. In *DPGM II*, it deemed facially overbroad a restrictive employment covenant prohibiting "any activity which may affect adversely the interests of" the employer, because, in part, the restrictive covenant was "in no way . . . specifically targeted at preventing [the defendants] from trading on the goodwill they created while serving [the plaintiff's] customers." 116 Fed. App'x. at 438. In *RLM Communications, Inc. v. Tuschen*, a North Carolina case, the Fourth Circuit similarly distinguished between covenants "focus[ed] on employment that raises the risk that [the defendant] will use knowledge obtained" from the plaintiff to its detriment and those that focus on the similarity between the new and former employer. 831 F.3d 190, 197 (4th Cir. 2016).

9

In light of this precedent, the fact that the plain language of the contract prevents Mr. Rodgers from taking any position with a competitor renders this agreement facially overbroad. Mr. Rodgers's additional arguments pertaining to geographic breadth and breach need not be reached.[3]

In Maryland, a finding of overbreadth—facial or as-applied—does not end the inquiry. "If a restrictive covenant is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits." *DPGM II*, 166 Fed App'x. at 439 (citing *Tawney v. Mut. System of Maryland*, 186 Md. 508 (1946). A court may not, however, "rearrange or supplement the language of the restrictive covenant" to precipitate a properly tailored revision. *Id.* (citing *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 465-66 (1991). "A court can only blue pencil a restrictive covenant if the offending provision is neatly severable." *Id.* "[A] court may not excise the dominant language or words from a covenant that is part of a single indivisible promise." *Paul*, 2017 WL 2462492, *8 (citing *DPGM II*, 116 Fed. App'x. at 440). Nor can a court "supplement, rearrange, or otherwise rewrite" the language of the restrictive covenant. *Id.*

The noncompete covenant in this case cannot be salvaged by the blue-pencil doctrine. There is no way to curtail the covenant's scope to specific positions within a competitor organization that raise the risk that Mr. Rodgers will capitalize on the goodwill he generated while at Bindagraphics. *DPGM II*, 166 Fed App'x. at 439. While the prohibition on direct and

---

[3] Bindagraphics cites four cases upholding restrictive covenants purportedly prohibiting an employee from working for a competitor in any capacity. They are all readily distinguishable. *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 643 (D. Md. 1998), a decision concerning a movant's likelihood of success on the merits for purposes of preliminary injunctive relief, focused on a challenge to a restrictive covenant's unlimited geographic reach. *Hekimian Labs., Inc. v. Domain Sys., Inc.*, 664 F. Supp. 493, 499-500 (S.D. Fla. 1987) is a Southern District of Florida case applying Maryland law that considered only the duration and geographic reach of the covenant at issue. Finally, *National Instrument, LLC v. Braithwaite*, 2006 WL 2405831, at *7 (Md. Cir. Ct. June 5, 2006) is a Circuit Court of Maryland, Baltimore City case, that similarly only considered geographic and temporal facial overbreadth arguments. *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630 (2002) is a North Carolina case applying a different test.

10

indirect competition and the application of the provision to prospective customers, arguably independent grounds to find the contract facially overbroad,[4] might possibly be excised from the covenant's text, section 5(d) of the contract, which delineates the specifics of Mr. Rodgers's promise not to compete, cannot be refashioned to focus on the type of prohibited employment instead of the competitor status of the new employer without adding language and rewriting the covenant. The character and extent of revision required is not permitted under the blue-pencil doctrine. The noncompete covenant remains facially overbroad. And it is therefore unenforceable.

### B. Nonsolicitation Covenant

The same rules apply to the nonsolicitation covenant Bindagraphics seeks to enforce. By its terms, the nonsolicitation covenant declares that, for one year following his termination, Mr. Rodgers will not directly or indirectly solicit any customer or prospective customer for products or services the same as, or similar to, those sold by Bindagraphics's trade binding division. The covenant additionally forbids Mr. Rodgers from selling, or being otherwise involved in the sale of, any such product or service to customers or prospective customers during that year. As in the noncompete covenant, customers are limited to those within Mr. Rodgers's sales territory who were either served by Bindagraphics in the year preceding Mr. Rodgers's departure or with whom Mr. Rodgers spoke within one year of them being a Bindagraphics customer. Prospective customers are those solicited by Mr. Rodgers or Bindagraphics in the year preceding Mr. Rodgers's termination. Here too, the question is whether the scope and duration of the prohibition is reasonably necessary to prevent Mr. Rodgers from trading on customer goodwill.

---

[4] *See Seneca One Finance, Inc.*, 214 F. Supp. 3d at 462-63; *Paul*, 2017 WL 2462492, *6.

The nonsolicitation clause at issue here is broader in scope than reasonably necessary because it applies to prospective customers and the passive sale or provision of services to a customer that Mr. Rodgers did not solicit. First, the covenant's restriction on solicitation of prospective customers, those within the sales territory solicited by Bindagraphics in the year preceding Mr. Rodgers's departure, is not narrowly drawn to cover only those with whom Mr. Rodgers had contact. Instead, while Mr. Rodgers may have contacted some prospective customers in his capacity with Bindagraphics, the prohibition includes all potential customers solicited by the Bindagraphics trade binding division, drawing a wide prohibition well beyond Mr. Rodgers's personal connections. Courts in this district have found restrictive covenants that attempt to reach prospective customers to be overbroad. *See Paul*, 2017 2462492, at *6 (explaining "the bar on soliciting [the plaintiff's] prospective customers, which includes those with whom the former employee may have had no personal contact, further renders the non-solicitation provision overbroad. . . . A prospective customer, under the plain meaning of the term, has not previously done business with [the plaintiff] and thus would not have been the subject of customer goodwill generated by a former . . . sales representative.") (internal citations omitted); *Seneca One Fin., Inc.*, 214 F.Supp.3d at 464 (stating "Seneca One has identified no authority that would support a right to protection of potential customers, and its inclusion of all individuals who have been in contact with Seneca One in its definition of 'Customers' is breathtaking in scope."). Limiting contact with prospective customers is sufficiently untethered from the protected goodwill concern to render this provision overbroad.

Next, the covenant here purports to limit Mr. Rodgers's ability to sell "or otherwise service" any Bindagraphics trade binding division customer. This provision reaches far beyond customers solicited by Mr. Rodgers. It extends to unsolicited bids from customers who initiate

contact with Mr. Rodgers, his work on projects solicited or arranged by other employees, and work on behalf of customers who patronize both competitors. As with a restriction barring solicitation of potential customers, the risk this provision seeks to forestall is a risk of greater competition. This is not a protected interest. *See DPGM II*, 166 Fed App'x. at 438. Instead, as the Maryland Court of Appeals explained in *Holloway v. Faw, Casson & Co.*, "[p]ersons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." 319 Md. 324, 335 (1990); *see also Paul*, 2017 2462492, at *6 (finding a "restriction on accepting business from [the plaintiff's] customers unreasonable" for this same reason). Because this provision is not reasonably necessary to the employer's protected interest it is facially overbroad.

In contrast to the noncompete provision, it is possible that the facially overbroad components of the nonsolicitation covenant are sufficiently separate (and severable) as to be blue-penciled. But while Bindagraphics asserts that the nonsolicitation clause can be narrowed to conform to Maryland law, *see* Resp. Defs.' Mots. Dismiss at pp. 10-11, ECF No. 15, it does not put forth a particular proposal for how the provision might be blue-penciled to pertain only to customers with whom Mr. Rodgers interacted. With what is before it, the court prefers not to decide whether the nonsolicitation promise can be narrowed, and if so, whether it is reasonably

necessary both facially and as-applied to Bindagraphics's protected interest.[5] Accordingly, Bindagraphics's nonsolicitation claim will be dismissed without prejudice.[6]

---

[5] The defendants also contend that the contract is unenforceable because it contains an illusory geographic restriction. *See, e.g.*, Rodgers, P&A Mot. Dismiss at p. 13, ECF 13-1. The contract notes: "A general description of Employee's Sales Territory is set forth on Addendum A to this Agreement [Compl. Ex. 4], which Sales Territory shall be subject to amendment and revision by Employer, in its sole discretion, at any time and from time to time (as so amended and revised, the 'Sales Territory')." Compl. Ex. 4, ECF No. 1-4 at p. 17. While the Bindagraphics customer Mr. Rodgers is alleged to have contacted after his departure was located geographically within the sales territory, and indeed was listed by name on the original "Eric's territory" list, this is ostensibly a facial challenge to the contract's enforceability. A promise is illusory if "the promisor retains an unlimited right to decide later the nature or extent of his performance." *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 149 (2003) (citing 1 Samuel Williston, Contracts, § 4:24 (4th Ed. 1990)). "An unlimited right to determine how to perform, or whether to perform at all, negates the promise to perform." *Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 273 (2009). That said, courts generally "prefer a construction [of a contract] which will make the contract effective rather than one which will make it illusory or unenforceable." *Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n*, 247 Md. 241, 247 (1967). "If there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory. The tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears that the parties intended a contract." 2 Corbin on Contracts § 5.28 (2018). And any "benefit to the promisor or ... detriment to the promisee is sufficient valuable consideration to support a contract." *Vogelhut v. Kandel*, 308 Md. 183, 191 (1986). Critically here, "Maryland law generally implies a covenant to act in good faith and deal fairly with the other party or parties to a contract. This principle *governs the manner in which a party may exercise the discretion accorded to it by the terms of the agreement.* In performing, the party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing." *Manning v. Mercatanti*, 898 F. Supp. 2d 850, 859 (D. Md. 2012) (emphasis supplied) (internal citations omitted). Unlike the arbitration-clause cases cited by Mr. Rodgers, a contract is not facially unenforceable merely because it delegates discretion to define one of its terms on an ongoing basis to a single party, where both parties otherwise incur binding obligations. Bindagraphics's ability to change the dimensions or businesses included in the sales territory is closer to an "open term" that has good reason to change over time, is premised upon a mutually enforceable agreement, and is limited by the implied covenant to act in good faith and fair dealing, than it is an illusory promise that "does not actually bind or obligate the promisor to do anything." *Cheek*, 378 Md. at 148.

[6] To the extent that there is a separate confidentiality covenant in the employment contract in question, the court does not assess its enforceability because the plaintiff has failed to sufficiently allege a breach. See Section 6 of the employment contract set forth above. There are no facts pleaded pertaining to specific confidential information Mr. Rodgers is alleged to have used.

14

ii. <u>Count II: Tortious Interference with A Contract</u>

Under Maryland law, tortious interference with a contract occurs when a third party intentionally interferes with another in his or her business or occupation and induces a breach of an existing contract, of which the defendant was aware, causing damages to the plaintiff. *Fowler*, 89 Md. App. at 466; *Macklin v. Robert Logan Associates*, 334 Md. 287, 296–97 (1994) (collecting cases); *see also Blondell v. Littlepage*, 413 Md. 96, 125 (2010). Fox Group, Inc. principally argues that there was no valid contract between Mr. Rodgers and Bindagraphics for the reasons put forth by Mr. Rodgers and considered above. It also contends that Bindagraphics has insufficiently alleged damages.

While an enforceable contract between Mr. Rodgers and Bindagraphics is necessary for the tort claim to survive, it is not sufficient; Bindagraphics must provide a detailed account of the damages it incurred. It is well established law that "expectancy damages for breach of a covenant not to compete [which here includes the nonsolicitation clause] generally are the profits that would have been realized had no breach occurred." *Fowler*, 89 Md. App. at 473. "These lost profits must be proved with 'reasonable certainty.'" *Id.* No such damages are alleged here. Instead, the damages allegation is hypothetical and speculative. *See* Compl. ¶ 33.

Further, to be viable, a tortious interference with contract cause of action requires Fox Group, Inc. to have known of the nonsolicitation clause at the time of the breach. "[T]he central question is whether, upon learning of the restrictive covenant that binds its new employee, the new employer nevertheless engages the employee to work for him in an activity that would mean violation of the contract not to compete." *Fowler*, 89 Md. App. at 469. Here, Bindagraphics has put forth no facts alleging that Fox Group, Inc. knew of the nonsolicitation provision in Mr.

15

Rodgers's contract with Bindagraphics at the time of the alleged breach. This count will be dismissed without prejudice.

### iii. Count III: MUTSA claim

A trade secret under the Maryland Uniform Trade Secrets Act ("MUTSA") is "[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to; and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Md. Code Com. Law § 11-1201(e). The plaintiff bears the burden of "producing *some* evidence" that the information taken meets the definition of a trade secret. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993); *see also AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (noting that before a court can establish misappropriation, the plaintiff must "demonstrat[e] an item is a trade secret").

In this case, the defendants do not dispute that customer databases may constitute a trade secret under the MUTSA. *See also Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 609-10 (D. Md. 2002). Rather, the defendants challenge Bindagraphics's trade secret claim on two grounds. First, they say that the complaint fails to plausibly plead a trade secret and that the trade secret revealed in the opposition is an improper attempt to amend the complaint. Reply at pp. 10-12. Second, they contend that Bindagraphics has failed to allege misappropriation. *Id.*

As it stands, the complaint is not clear enough as to what Bindagraphics trade secret Mr. Rodgers is alleged to have taken with him upon his departure. A plaintiff is not permitted to

amend its complaint by supplying new factual allegations in a brief in opposition to a defendant's motion to dismiss. *See Adams v. Am. Fed'n of State*, 167 F. Supp. 3d 730, 736 (D. Md. 2016). The better course of action is to, when permitted, file an amended complaint. This claim will be dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Mr. Rodgers's and Fox Group, Inc.'s motions to dismiss will be granted. Bindagraphics's noncompete clause contract claim will be dismissed with prejudice. Its nonsolicitation clause contract claim, confidentiality clause contract claim, tort claim, and MUTSA claim will be dismissed without prejudice.

A separate order follows.

_3/27/19_
Date

_CCB_
Catherine C. Blake
United States District Judge